**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ANONOS INNOVATIONS LLC, <br><br> *Plaintiff*, <br><br> vs. <br><br> JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, <br><br> *Defendant*. | CASE NO.   2:26-cv-00594 <br><br><br> **Complaint for Patent Infringement** <br><br> **JURY DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Anonos Innovations LLC ("Plaintiff") files this complaint against Defendant JPMorgan Chase Bank, National Association ("Defendant" or "JPMorgan"), alleging infringement of U.S. Patent Nos. 9,087,215, 9,087,216, and 9,129,133. Plaintiff owns and operates the Anonos® business ("Anonos"), founded in 2013 and operated continuously to the present. Defendant infringes Anonos's patents by using tokenization providing improved privacy, anonymity and security for Defendant's merchant payment processing platforms (the "Accused Products," described in paragraph 14 below) made, used, offered for sale and/or sold in the United States and supplied to customers in the United States.

**BACKGROUND**

1.     This complaint arises from Defendant's infringement of the following United States patents owned by Plaintiff: United States Patent Nos. 9,087,215 ("the '215 patent"), 9,087,216 ("the '216 patent"), and 9,129,133 ("the '133 patent") (collectively, the "Asserted Patents").

1

2.      Anonos was founded in 2013 by data privacy and security leaders Ted Myerson and Gary LaFever. Prior to founding Anonos, Mr. Myerson founded FTEN Inc. in 2001, with Mr. LaFever later joining as its Chief Operating Officer. FTEN, the fastest-growing software company on the Inc. 500 list for two consecutive years, became the leading provider of real-time intraday risk management systems to the global financial services industry, with NASDAQ ultimately acquiring FTEN in 2010. By the time NASDAQ acquired FTEN in December 2010, FTEN's technology processed risk calculations on more than one-third of daily U.S. equities trading volume. While at NASDAQ, Messrs. Myerson and LaFever worked closely with Amazon Web Services to create FinQloud, one of the earliest industry-wide-compliant commercial cloud platforms that enabled banks and other financial institutions to manage sensitive data securely and in compliance with applicable regulatory requirements. Both are career inventors as well: Messrs. Myerson and LaFever are each a named inventor on dozens of granted United States and international patents–including each of the Asserted Patents.

3.      Since its founding, Anonos has operated continuously — first through Anonos Inc. and subsequently through Plaintiff — under the same leadership and key staff, developing, marketing, and offering for sale the same Data Embassy® software. Anonos continues to develop and expand its products and patented technology, with additional United States patents issuing to Plaintiff in 2026 naming Messrs. Myerson and LaFever among the inventors.

4.      Recognizing the inherent risks and problems of a modern-day data-driven world, Anonos is a global data privacy and security software company that develops state-of-the-art data protection innovations and solutions. From its founding, one of the primary areas Anonos aimed to enhance was in the development of solutions for protecting data-in-use for transaction processing and analytics, beyond conventional solutions for protecting data-in-transit or data-at-

2

rest. Conventional techniques existed to protect data while it was being transmitted or stored, but these techniques failed to protect data during its actual use. For example, conventional techniques, such as encryption, "lock" the data during transmission or storage and render it safe, but unusable for anything in its encrypted form. And to make it usable again, the data must be decrypted, making it unsafe. Anonos took on the challenge of protecting data while still preserving its usefulness. The result was the development of unconventional, patented solutions to protect data during its actual use. Anonos's technology allows for taking sensitive data, such as financial accounts data, credit card data, health data, or other sensitive personal information, and *using* it while maintaining privacy and security, whether to securely make a purchase or access a healthcare service. Anonos's patented solutions provide "Data without the Drama"®—including specific features, such as a Tokenization API and a Data Privacy Governance Layer, which enable the privacy-preserving protection of data during its actual use. Anonos developed and offers for sale its Data Embassy® software enabling Variant Twins®, reflecting Anonos's innovative privacy-enhancing technologies, utilizing advanced pseudonymization and tokenization, and other privacy-enhancing technologies to transform personal data into secure, privacy-respectful outputs, complying with regulations like GDPR, and allowing for data distribution, sharing, and combination without compromising privacy or security. Anonos has worked with a range of companies to deploy, test, and prove out its technology, including household names such as NVIDIA, IBM, Ernst & Young, PwC, Bristol Myers Squibb, Informatica, and the DTCC.

5.      Anonos's privacy-enabling technology has earned sustained recognition from Gartner, a leading independent technology research and advisory firm. In 2018, Gartner named Anonos a "Cool Vendor," describing the Anonos platform as one that yields protected data in which "the risk of linkage attacks are reduced to near zero." Gartner, *Cool Vendors in Privacy*

*Management* (Apr. 27, 2018). In the years since, Anonos has been cited in more than 65 Gartner research publications — nearly 40 of them Gartner Hype Cycles — spanning banking and financial services, data security, privacy, and more than a dozen additional technology and industry sectors.

6.      The risks Anonos set out to solve soon became front-page news. In the past decade and a half, several high-profile catastrophic data breaches exposed the vulnerability of traditional card payment systems that transmitted and stored raw payment account numbers across merchant and banking networks. As one example, the data breach suffered by Target Corporation, disclosed in December 2013, compromised approximately 40 million credit and debit card accounts and 70 million customer records. *See* U.S. Senate Commerce Committee, *"A 'Kill Chain' Analysis of the 2013 Target Data Breach"* (March 26, 2014), https://www.commerce.senate.gov/wp-content/uploads/media/doc/2014%200325%20Target%20Kill%20Chain%20Analysis.pdf.    This and similar breaches have demonstrated that, absent a mechanism to secure sensitive card credentials, any point in the payment chain—from point-of-sale terminal to acquiring bank to card network—represented a potential vector for mass theft of consumer financial data. *See* CardConnect, *"What We Learned from Target's Data Breach 2013"* (May 19, 2023), https://www.cardconnect.com/launchpointe/payment-trends/target-data-breach/.

7.      The widespread adoption of tokenization-supported payment processing by the banking industry has since proven enormously valuable and transformative in both reducing fraud losses and improving transaction authorization rates. *See* Network Tokenization for Merchants (J.P. Morgan, February 2024) (https://www.jpmorgan.com/insights/payments/merchant-services/network-tokenization-for-merchants), (https://www.jpmorgan.com/content/dam/jpm/cib/complex/content/treasury-services/network-tokenization-for-merchants/visa-network-tokenization-for-merchants-ada-complaint.pdf) ("Visa

network tokens are delivering: 18% fraud reduction 4.3% authorization rate lift"). As JPMorgan explains in the February 2024 report, "When your customer enters their payment information at checkout, instead of receiving their personal details directly, J.P. Morgan converts this information into an acquirer token which can be securely stored on your systems or passed on for processing. Acquirer tokens protect the first part of the payment process between the acquirer and the merchant. Then, the network token secures credentials as they move the rest of the way through the ecosystem to the issuer. The more visibility and control that issuers have on the credential, the more confidence they are likely to have in approving a transaction. Network tokens are built to EMVCo global standards and work in tandem with acquirer tokens to help provide security across every stage of the payment process. When network tokens and acquirer tokens work together, they can help improve security, decrease chargebacks, and increase approval rates." *Id.* For bank issuers and bank merchant services providers, these improvements translate directly into lower chargeback exposure, improved authorization approval rates, and higher revenues, as well as cost savings.

## PLAINTIFF AND THE ASSERTED PATENTS

8.     Plaintiff Anonos Innovations LLC is a Texas limited liability company with its headquarters at 7950 Legacy Dr., Suite 400, Plano, TX 75024-4131.

9.     Plaintiff owns all right, title, and interest in and to the Asserted Patents, including all claims for past infringement, by assignments.

10.     U.S. Patent No. 9,087,215, entitled "Dynamic De-Identification and Anonymity," issued on July 21, 2015. A copy of the '215 patent is attached to this complaint as Exhibit 1.

11.     U.S. Patent No. 9,087,216, entitled "Dynamic De-Identification and Anonymity," issued on July 21, 2015. A copy of the '216 patent is attached to this complaint as Exhibit 2.

5

12.    U.S. Patent No. 9,129,133, entitled "Dynamic De-Identification and Anonymity," issued on September 8, 2015. A copy of the '133 patent is attached to this complaint as Exhibit 3.

### DEFENDANT AND THE ACCUSED PRODUCTS

13.    On information and belief, Defendant JPMorgan Chase Bank, National Association is a national banking association existing under the laws of the United States with its principal place of business at 1111 Polaris Parkway, Columbus, OH 43240. Defendant can be served at CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

14.    The Accused Products include Defendant's Merchant Services and associated Commerce platform, which provides Online Payments, Checkout, and Tokenization (including Payments API, Checkout API, and Tokenization API) to facilitate tokenization-supported payment processing. The Accused Products also include JPMorgan Commerce Platform / Helix Merchant-Acquiring Payment Processing Platform / Helix Connect.

15.    Defendant infringes the Asserted Patents with respect to the Accused Products, including Defendant's Merchant Services and associated Commerce platform, which Defendant makes, uses, offers for sale and/or sells and/or monetizes in the United States and supplies to customers in the United States, and/or through inducing infringement by end-users of Defendant's Merchant Services and associated Commerce platform in the United States.

### DEFENDANT'S KNOWLEDGE OF THE ASSERTED PATENTS

16.    For years before this action, Anonos brought its patented inventions, and the very patents asserted here, directly to JPMorgan's attention—to JPMorgan's architects, its technologists, its data and artificial-intelligence leadership, and its own privacy lawyers. The United States Patent and Trademark Office itself placed Anonos's patented technology before JPMorgan's patent counsel during the prosecution of JPMorgan's own patents. JPMorgan

6

understood Anonos's technology, evaluated it against its own enterprise requirements, and recognized its relevance to JPMorgan's data, payments, and tokenization infrastructure. Yet rather than take a license or design around Anonos's patents, JPMorgan continued and expanded the accused conduct. JPMorgan's infringement has been, and continues to be, willful.

17.    Anonos has continuously marked its products and materials in accordance with 35 U.S.C. § 287, including through its virtual patent marking web page (anonos.com/patents), its product documentation, and its product EULAs with notices identifying Anonos's patents, including the '215 patent, the '216 patent, and the '133 patent. Throughout Anonos's dealings with JPMorgan, Anonos provided JPMorgan with materials bearing those patent-marking notices.

18.    On information and belief, JPMorgan's awareness of Anonos and its patented technology dates to at least January 31, 2017. As early as 2017, JPMorgan personnel responsible for data de-identification, including a then Vice President in JPMorgan's Firmwide Data Management organization whose responsibilities included data de-identification, registered for an Anonos data-privacy presentation addressing the de-identification and pseudonymization of personal data, and received follow-up materials bearing Anonos's patent-marking notice identifying Anonos's issued patents.

19.    On August 6, 2019, Anonos presented its BigPrivacy® platform and product roadmap to JPMorgan, including Mitch Pietruszkiewicz, JPMorgan's then Executive Director of Global Architecture. The presentation addressed data privacy capabilities applicable to all forms of sensitive data, including payment data, and included a patent-marking notice that expressly identified Anonos's issued patents, including U.S. Patent Nos. 9,129,133, 9,087,216, and 9,087,215, the three patents asserted in this action.

20.    On January 21, 2020, Anonos presented its pseudonymization and de-identification

technology to JPMorgan's in-house privacy counsel, including Brendon Tavelli, JPMorgan's then Executive Director and Assistant General Counsel, responsible for privacy and security. The materials Anonos provided in connection with the presentation included Anonos's patent-marking notice identifying the Asserted Patents.

21.     On November 7, 2022, the United States Patent and Trademark Office made JPMorgan aware of Anonos's patented technology. During the prosecution of JPMorgan's own Application No. 16/845,156, titled "System and method for implementing a market data hub via distributed ledger technology," the examiner identified Anonos's published patent application, LaFever et al., U.S. Patent Application Publication No. 2018/0307859 by name in a Final Rejection as prior art "pertinent to Applicant's disclosure," and characterized it as disclosing "a system for enforcing centralized privacy controls in de-centralized systems." That publication is a member of the same patent family as the Asserted Patents, claims priority to the same November 1, 2013 application, and names Messrs. Myerson and LaFever among its inventors—and each of the Asserted Patents had been an issued patent for more than seven years by that date. JPMorgan responded to the Final Rejection and continued to prosecute the application to issuance as U.S. Patent No. 12,282,917, which cites the Anonos publication on its face.

22.     Beginning in February 2023, JPMorgan undertook an in-depth evaluation of Anonos's technology. On February 9, 2023, Jaideep Mathur, then an Executive Director in JPMorgan's Global Technology organization, requested a deep-dive presentation and demonstration, and sent Anonos a product-requirements workbook seeking a comparison of tokenization technologies. Over the following year, Anonos and JPMorgan exchanged more than fifty emails and held a series of meetings and product demonstrations, including a demonstration in February 2023, multiple meetings in the spring of 2023 culminating in a May 12, 2023 deep-

dive presentation of the Anonos platform, and a further demonstration in February 2024.

23.    On June 7, 2023, Anonos met in-person with Stephanie Zhang, then a Managing Director in JPMorgan's Chief Data and AI Office responsible for Enterprise AI and Data Products. The following week, Anonos sent Ms. Zhang an Anonos overview presentation. That presentation included a patent-marking notice that expressly identified Anonos's issued patents, including each of the three patents asserted in this action.

24.    Across this multi-year relationship, Anonos repeatedly placed its patented technology, and the specific patents asserted in this action, before JPMorgan's architecture, technology, data-management, artificial-intelligence-governance, and legal, privacy, and security personnel. The subject matter of these interactions, including the advanced de-identification, pseudonymization, and tokenization of sensitive data, relates directly to the subject matter of the Asserted Patents. Moreover, JPMorgan did not merely receive Anonos's materials, JPMorgan solicited Anonos briefings, attended Anonos product demonstrations, accessed Anonos's future product roadmaps, evaluated Anonos's technology against its own enterprise requirements, and recognized its relevance to JPMorgan's data, payments, and tokenization infrastructure.

25.    Notwithstanding its knowledge of Anonos's patented technology and the Asserted Patents, JPMorgan neither sought nor obtained a license from Anonos, and neither ceased nor redesigned the accused systems or functionality. Instead, JPMorgan continued and expanded its use of the accused tokenization, payments, and data infrastructure, including by building out and deploying its in-house Merchant Services and associated Commerce and Helix merchant-acquiring platform across the United States after it became aware of Anonos's patents and technology.

26.    By no later than the dates set forth above, JPMorgan knew of, or was willfully blind to, the '215 patent, the '216 patent, and the '133 patent, as well as its infringement of them.

JPMorgan's infringement of each of the Asserted Patents has been, and continues to be, deliberate, intentional, and willful. Plaintiff is therefore entitled to enhanced damages under 35 U.S.C. § 284.

**JURISDICTION AND VENUE**

27.     This action arises under the patent laws of the United States, Title 35 of the United States Code.

28.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

29.     This Court has personal jurisdiction over JPMorgan in this action because JPMorgan has, directly or through agents and/or intermediaries, committed acts of infringement within this District giving rise to this action, has a regular and established business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over JPMorgan would not offend traditional notions of fair play and substantial justice. JPMorgan, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in Texas and the Eastern District of Texas, regularly doing business or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from products and/or services provided to individuals in Texas, and committing acts of infringement of the Asserted Patents in this District by, among other things, using Anonos's patented technology with Defendant's Merchant Services and associated Commerce platform in the United States, selling and/or offering for sale Defendant's Merchant Services and associated Commerce platform in the United States, or by inducing infringement by end-users of Defendant's Merchant Services and associated Commerce platform in the United States, including Defendant's Merchant Services and associated Commerce platform accused of infringement in this case.

10

30.    JPMorgan, directly and/or through subsidiaries or intermediaries, has purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by customers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used in the Eastern District of Texas.

31.    In addition, and/or alternatively, this Court has jurisdiction over JPMorgan under Federal Rule of Civil Procedure 4(k)(2). This action arises from actions of JPMorgan directed toward the United States including committing at least a portion of the infringing acts alleged herein and regularly transacting business, soliciting business, and deriving revenue from the sale of goods and services, including infringing goods and services, to individuals in the United States. Therefore, JPMorgan has purposefully availed itself of the benefits of the United States, including the Eastern District of Texas, and the exercise of jurisdiction over JPMorgan would not offend traditional notions of fair play and substantial justice.

32.    Defendant maintains many locations at which it operates its businesses in Texas and in this District that are the subject of this patent infringement case, including, but not limited to its "technology hub" at 8181 Communications Parkway, Plano, TX 75024, with more than 3,000 technologists in the surrounding area. *See* "With More Than 3,000 Technologists, Dallas Is a Key Global Technology Center for JPMorgan Chase" (May 4, 2023), https://www.jpmorganchase.com/newsroom/stories/dallas-global-tech-center; "Veteran's Unconventional Path to Landing her Dream Job in Tech" (Sept. 1, 2023), https://www.jpmorganchase.com/newsroom/stories/realizing-potential-through-perseverance (describing "JPMorgan Chase's commitment to building a technology hub in the Dallas Fort-Worth region on our corporate campus in Plano, Texas"); The Beck Group, JPMorgan Chase,

https://www.beckgroup.com/projects/jpmorgan-chase/ (50-acre campus). Other locations that Defendant operates its business in this District include: (1) 112 W Austin St, Marshall, TX 75670; (2) 551 E 15th St, Plano, TX 75074; (3) 5375 Lebanon Rd, Frisco, TX 75034; and (4) 140 S SW Loop 323, Tyler, TX 75702. Thus, venue is proper in this District under 28 U.S.C. § 1400(b) since Defendant has established and maintained a regular place of business in this District and committed acts of patent infringement in this District.

33.    Further, upon information and belief, JPMorgan has not contested proper venue in this Judicial District in other patent infringement actions.

## COUNT 1 – CLAIM FOR INFRINGEMENT OF THE '215 PATENT

34.    Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs and further alleges as follows:

35.    On July 21, 2015, the United States Patent and Trademark Office issued U.S. Patent No. 9,087,215, entitled "Dynamic De-Identification and Anonymity." Ex. 1.

36.    Plaintiff is the owner of the '215 patent, with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

37.    The written description of the '215 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

38.    Anonos has satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '215 patent, and Plaintiff is entitled to damages for Defendant's past infringement.

39.     Defendant has directly infringed (literally and equivalently) and induced others to infringe the '215 patent by making, using, selling, offering for sale, or importing products, services, and systems that infringe the claims of the '215 patent and by inducing others to infringe the claims of the '215 patent without a license or permission, such as for example instructing users of Defendant's Merchant Services and associated Commerce platform to enable tokenization and use the technology claimed in the '215 patent.

40.     The Accused Products include Defendant's Merchant Services and associated Commerce platform in the United States, which provides Online Payments, Checkout, and Tokenization (including Payments API, Checkout API, and Tokenization API) to facilitate tokenization-supported payment processing. The Accused Products also include JPMorgan Commerce Platform / Helix Merchant-Acquiring Payment Processing Platform / Helix Connect.

41.     Defendant infringes the '215 patent, such as with respect to the Accused Products, which are made and/or used and/or offered for sale and/or sold in the United States and supplied to customers in the United States.

42.     Defendant also infringes the '215 patent through inducing infringement by end-users of Defendant's Merchant Services and associated Commerce platform in the United States.

43.     The infringement of the '215 patent is attributable to Defendant. Defendant directs and controls use of the Accused Products to perform acts that result in infringement of the '215 patent. Defendant places the accused system into service that uses tokenization-supported payment processing in infringement of the '215 patent. Defendant benefits from placing the system into service by generating incremental revenues and profits.

44.     For example, attached as Exhibit 4 is a chart setting forth an exemplary description of at least one example of Defendant's infringement of at least claim 1 of the '215 patent.

45.     Defendant also knowingly and intentionally induces and contributes to infringement of the '215 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, at least since receipt of this Complaint, Defendant has had knowledge of or has been willfully blind to its infringement of the '215 patent. As another example, Defendant has had knowledge of or has been willfully blind to its infringement of the '215 patent at least since January 31, 2017, as alleged in paragraphs 18 through 26 above.

46.     Despite this knowledge of the '215 patent, Defendant continues to actively encourage and instruct its customers to use and integrate the Accused Products in ways that directly infringe the '215 patent. Defendant does so knowing and intending that its customers will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products and otherwise perform the infringing acts, despite its knowledge of the '215 patent, thereby specifically intending for and inducing its customers to infringe the '215 patent through the customers' normal and customary use of the Accused Products.

47.     Defendant has infringed multiple claims of the '215 patent, including at least independent claim 1. By way of example only, the normal and customary use of Defendant's Merchant Services and associated Commerce platform to process a payment with an acquirer token and a network token infringes an exemplary claim of the '215 patent, as in the description set forth in Exhibit 4.

48.     Defendant knows how the Accused Products are used and knows, or is willfully blind to the fact, that making, using, offering to sell, and selling the Accused Products to its customers, would constitute willful infringement of the '215 patent.

49.     Defendant has induced, and continues to induce, infringement of the '215 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and monetize the

14

Accused Products. On information and belief, these acts include providing information and instructions on the use of the Accused Products; providing information, education and instructions to its customers to integrate the Accused Products and tokenization-supported payments into its customers' own websites; providing the Accused Products to customers; and indemnifying patent infringement within the United States.

50.     Defendant offers to sell or sells within the United States or imports into the United States a component constituting a material part of the invention claimed in the '215 patent, including Defendant's Tokenization API and the tokenization and tokenization-supported payment processing components of its Checkout and Online Payments APIs, which Defendant supplies to merchants for integration into their own websites and applications, knowing the same to be especially made or adapted for use in infringement, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

51.     Anonos has been damaged by Defendant's infringement of the '215 patent. Plaintiff is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 2 – CLAIM FOR INFRINGEMENT OF THE '216 PATENT

52.     Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs and further alleges as follows:

53.     On July 21, 2015, the United States Patent and Trademark Office issued U.S. Patent No. 9,087,216, entitled "Dynamic De-Identification and Anonymity." Ex. 2.

54.     Plaintiff is the owner of the '216 patent, with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

55.     The written description of the '216 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how

the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

56.     Anonos has satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '216 patent, and Plaintiff is entitled to damages for Defendant's past infringement.

57.     Defendant has directly infringed (literally and equivalently) and induced others to infringe the '216 patent by making, using, selling, or offering for sale, or importing products, services, and systems that infringe the claims of the '216 patent and by inducing others to infringe the claims of the '216 patent without a license or permission, such as for example instructing users of Defendant's Merchant Services and associated Commerce platform to enable tokenization and use the technology claimed in the '216 patent.

58.     The Accused Products include Defendant's Merchant Services and associated Commerce platform in the United States, which provides Online Payments, Checkout, and Tokenization (including Payments API, Checkout API, and Tokenization API) to facilitate tokenization-supported payment processing. The Accused Products also include JPMorgan Commerce Platform / Helix Merchant-Acquiring Payment Processing Platform / Helix Connect.

59.     Defendant infringes the '216 patent, such as with respect to the Accused Products, which are made and/or used and/or offered for sale and/or sold in the United States and supplied to customers in the United States.

60.     Defendant also infringes the '216 patent through inducing infringement by end-users of Defendant's Merchant Services and associated Commerce platform in the United States.

61.     The infringement of the '216 patent is attributable to Defendant. Defendant directs and controls use of the Accused Products to perform acts that result in infringement of the '216

16

patent. Defendant places the accused system into service that uses tokenization-supported payment processing in infringement of the '216 patent. Defendant benefits from placing the system into service by generating incremental revenues and profits.

62.     For example, attached as Exhibit 5 is a chart setting forth an exemplary description of at least one example of Defendant's infringement of at least claim 1 of the '216 patent.

63.     Defendant also knowingly and intentionally induces and contributes to infringement of the '216 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, at least since receipt of this Complaint, Defendant has had knowledge of or has been willfully blind to its infringement of the '216 patent. As another example, Defendant has had knowledge of or has been willfully blind to its infringement of the '216 patent at least since January 31, 2017, as alleged in paragraphs 18 through 26 above.

64.     Despite this knowledge of the '216 patent, Defendant continues to actively encourage and instruct its customers to use and integrate the Accused Products in ways that directly infringe the '216 patent. Defendant does so knowing and intending that its customers will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products and otherwise perform the infringing acts, despite its knowledge of the '216 patent, thereby specifically intending for and inducing its customers to infringe the '216 patent through the customers' normal and customary use of the Accused Products.

65.     Defendant has infringed multiple claims of the '216 patent, including at least independent claim 1. By way of example only, the normal and customary use of Defendant's Merchant Services and associated Commerce platform to process a payment with an acquirer token and a network token infringes an exemplary claim of the '216 patent, as in the description set forth in Exhibit 5.

66.     Defendant knows how the Accused Products are used and knows, or is willfully blind to the fact, that making, using, offering to sell, and selling the Accused Products to its customers, would constitute willful infringement of the '216 patent.

67.     Defendant has induced, and continues to induce, infringement of the '216 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and monetize the Accused Products. On information and belief, these acts include providing information and instructions on the use of the Accused Products; providing information, education and instructions to its customers to integrate the Accused Products and tokenization-supported payments into its customers' own websites; providing the Accused Products to customers; and indemnifying patent infringement within the United States.

68.     Defendant offers to sell or sells within the United States or imports into the United States a component constituting a material part of the invention claimed in the '216 patent, including Defendant's Tokenization API and the tokenization and tokenization-supported payment processing components of its Checkout and Online Payments APIs, which Defendant supplies to merchants for integration into their own websites and applications, knowing the same to be especially made or adapted for use in infringement, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

69.     Anonos has been damaged by Defendant's infringement of the '216 patent. Plaintiff is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 3 – CLAIM FOR INFRINGEMENT OF THE '133 PATENT

70.     Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs and further alleges as follows:

18

71.     On September 8, 2015, the United States Patent and Trademark Office issued U.S. Patent No. 9,129,133, entitled "Dynamic De-Identification and Anonymity." Ex. 3.

72.     Plaintiff is the owner of the '133 patent, with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

73.     The written description of the '133 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

74.     Anonos has satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '133 patent, and Plaintiff is entitled to damages for Defendant's past infringement.

75.     Defendant has directly infringed (literally and equivalently) and induced others to infringe the '133 patent by making, using, selling, or offering for sale, or importing products, services, and systems that infringe the claims of the '133 patent and by inducing others to infringe the claims of the '133 patent without a license or permission, such as for example instructing users of Defendant's Merchant Services and associated Commerce platform to enable tokenization and use of the technology claimed in the '133 patent.

76.     The Accused Products include Defendant's Merchant Services and associated Commerce platform in the United States, which provides Online Payments, Checkout, and Tokenization (including Payments API, Checkout API, and Tokenization API) to facilitate tokenization-supported payment processing. The Accused Products also include JPMorgan Commerce Platform / Helix Merchant-Acquiring Payment Processing Platform / Helix Connect.

77.     Defendant infringes the '133 patent, such as with respect to the Accused Products, which are made and/or used and/or offered for sale and/or sold and/or monetized in the United States and supplied to customers in the United States.

78.     Defendant also infringes the '133 patent by selling and/or offering for sale the Accused Products in the United States, and/or through inducing infringement by end-users of Defendant's Merchant Services and associated Commerce platform in the United States.

79.     The infringement of the '133 patent is attributable to Defendant. Defendant directs and controls use of the Accused Products to perform acts that result in infringement of the '133 patent. Defendant places the accused system into service that uses tokenization-supported payment processing in infringement of the '133 patent. Defendant benefits from placing the system into service by generating incremental revenues and profits. Defendant also makes, uses, and stores on its servers non-transitory computer readable media containing the claimed computer executable instructions — the software that performs the Accused Products' tokenization-supported payment processing — in infringement of the '133 patent. Defendant benefits from making and using those media by generating incremental revenues and profits.

80.     For example, attached as Exhibit 6 is a chart setting forth an exemplary description of at least one example of Defendant's infringement of at least claim 14 of the '133 patent.

81.     Defendant also knowingly and intentionally induces and contributes to infringement of the '133 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, at least since receipt of this Complaint, Defendant has had knowledge of or has been willfully blind to its infringement of the '133 patent. As another example, Defendant has had knowledge of or has been willfully blind to its infringement of the '133 patent at least since January 31, 2017, as alleged in paragraphs 18 through 26 above.

82.    Despite this knowledge of the '133 patent, Defendant continues to actively encourage and instruct its customers to use and integrate the Accused Products in ways that directly infringe the '133 patent. Defendant does so knowing and intending that its customers will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or monetize the Accused Products and otherwise perform the infringing acts, despite its knowledge of the '133 patent, thereby specifically intending for and inducing its customers to infringe the '133 patent through the customers' normal and customary use of the Accused Products.

83.    Defendant has infringed multiple claims of the '133 patent, including at least independent claim 14. By way of example only, the normal and customary use of Defendant's Merchant Services and associated Commerce platform to process a payment with an acquirer token and a network token infringes an exemplary claim of the '133 patent, as in the description set forth in Exhibit 6.

84.    Defendant knows how the Accused Products are used and knows, or is willfully blind to the fact, that making, using, offering to sell, and selling the Accused Products to its customers, would constitute willful infringement of the '133 patent.

85.    Defendant has induced, and continues to induce, infringement of the '133 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Products. On information and belief, these acts include providing information and instructions on the use of the Accused Products; providing information, education and instructions to its customers to integrate the Accused Products and tokenization into its customers' own websites; providing the Accused Products to customers; and indemnifying patent infringement within the United States.

86.     Defendant offers to sell or sells within the United States or imports into the United States a component constituting a material part of the invention claimed in the '133 patent, including Defendant's Tokenization API and the tokenization and tokenization-supported payment processing components of its Checkout and Online Payments APIs, which Defendant supplies to merchants for integration into their own websites and applications, knowing the same to be especially made or adapted for use in infringement, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

87.     Anonos has been damaged by Defendant's infringement of the '133 patent. Plaintiff is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## JURY DEMAND

88.     Plaintiff demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## RELIEF REQUESTED

Plaintiff prays for the following relief:

A.     A judgment in favor of Plaintiff that Defendant has infringed the Asserted Patents, and that the Asserted Patents are valid and enforceable;

B.     A judgment and order requiring Defendant to pay Plaintiff past and future damages arising out of Defendant's infringement of the Asserted Patents in an amount no less than a reasonable royalty, costs, expenses, and pre- and post-judgment interest for its infringement of the Asserted Patents, as provided under 35 U.S.C. § 284;

C.     A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Plaintiff, including, without limitation, pre-judgment and post-judgment interest;

22

Case 2:26-cv-00594   Document 1   Filed 07/17/26   Page 23 of 24 PageID #:  23

D.     A judgment that Defendant's infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

E.     A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorney's fees and costs; and

F.     Any and all other relief to which Plaintiff may be entitled.

Dated:   July 17, 2026

Respectfully submitted,

*/s/ Marc Fenster*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
Minna Y. Jay
CA State Bar No. 305941
Email: mjay@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

Andrea L. Fair
TX State Bar No. 24078488
Email: andrea@millerfairhenry.com
MILLER FAIR HENRY, PLLC
1507 Bill Owens Pkwy
Longview, Texas 75604

**ATTORNEYS FOR PLAINTIFF
ANONOS INNOVATIONS LLC**

24