October 5, 2026

The Honorable Rodney Gilstrap
United States District Judge
United States District Court, Eastern District of Texas
Sam B. Hall Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, TX 75670

**Re:** *Anonos Innovations LLC v. JPMorgan Chase Bank, National Association*, Case No. 2:26-cv-00594-JRG

Dear Judge Gilstrap:

Pursuant to the Court's Standing Order Regarding Motions Under 35 U.S.C. § 101 and Accompanying Certifications, Plaintiff Anonos Innovations LLC ("Anonos") and Defendant JPMorgan Chase Bank, National Association ("JPMC") respectfully submit this joint letter following the filing of JPMC's Motion to Dismiss for Failure to State a Claim (Dkt. 23).

**Plaintiff Anonos's Position**

Claim construction is necessary because JPMC's § 101 motion directly implicates the construction of terms in all three asserted patents. JPMC's assertion that "[u]nder any constructions Anonos might propose" the claims would still recite "changing codes" (Dkt. 23 at 23) is ***not*** construction-neutral—it construes the claims to cover single-use codes the applicant distinguished during prosecution. Because JPMC's § 101 arguments could only prevail under its erroneous claim constructions that ignore the intrinsic record, these claim construction disputes should be resolved before the Court decides eligibility. *BT Wearables LLC v. Zepp Health Corp*., No. 2:25-cv-00318-JRG, Dkt. 56 at 2-3 (E.D. Tex. June 2, 2026) (denying motion to dismiss where "claim construction could be of benefit in addressing the issues of eligibility"); *DigitalDoors, Inc. v. Cathay Bank*, No. 2:24-cv-00312-JRG-RSP, 2025 WL 957210, at *2 (E.D. Tex. Mar. 10, 2025) (denying motion to dismiss; "a definitive ruling on eligibility before claim construction is only warranted in narrow circumstances, making such a ruling the exception rather than the norm"); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (when construction is disputed at the pleading stage, the Court "must proceed by adopting the non-moving party's constructions" or "must resolve the disputes to whatever extent is needed to conduct the § 101 analysis").[1]

JPMC's § 101 motion wrongly asserts that the claims are directed to the abstract idea of "concealing a person's identity by substituting ***time-varying codes*** for the person's identifying information," misconstruing them to analogize to claims held abstract in *Universal Secure Registry v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021) ("*USR*"). Dkt. 23 at 10, 14. For example, JPMC construes "associate…two or more dynamically-changing, temporally unique identifiers with the first data subject" as equivalent to *USR* claim 22's step of "mapping" a time-varying code presented by an entity to the "identity of the entity using the time-varying multicharacter code." *Id.* at 14, Appx. A. While JPMC tries to portray the claimed inventions as simply "substituting changing codes for identifying information" (Dkt. 23 at 12), the claims as written and especially as properly construed show that is not the case. The claimed "associate" is fundamentally different from *USR*'s "mapping," which simply resolves the identity of a user after it presents a single-use time-varying code. *Id.* In contrast, "associate…two or more [identifiers] with the first data subject" requires assigning two identifier values to a data subject as its identifiers. '215 Pat. at 7:32-37, 13:66-14:14. By also "stor[ing]" the assigned identifiers with the recited "time period data," the claims recite a data structure that overcomes the limitations of the single-use codes of the prior art and is an example of the "how" that JPMC alleges the claims lack.

The prosecution history shows JPMC is misconstruing the claims and ignoring the claimed advance over conventional single-use codes. As the applicant explained, unlike *USR*'s single-use codes, the claimed system stores two identifiers for the same subject and retains the associations of both identifiers, providing an "ability to link back" that the applicant distinguished from single-use codes and keys that "can only be used once but then cannot be used again." '215 FH, May 11, 2015 Reply to O.A. at 17-18 ("Cochran's 'mutating IDs' are, despite the superficial linguistic

---

[1] Anonos disputes that '215 claim 1 is representative (Dkt. 23 at 8–9). '216 claim 1 applies both periods and non-use clauses to the combined identifying-and-retrieving function, and '133 claim 14 adds retrieval to the first period but not the non-use clauses. Such differences only further show construction is needed. *See BT Wearables*, Dkt. 56 at 2 (construction needed where terms are disputed among purportedly representative claims).

similarity to the claim term 'dynamically-changing, temporally unique identifiers'—quite different in actual meaning from the claimed DDIDs."); *id.* at 20 (distinguishing Cochran, "whereby the key can only be used once but then cannot be used again," from what is "recited and claimed," which provides "the ability to link back"); '216 FH, Apr. 6, 2015 Reply to O.A. at 15-17 (similar); '133 FH, Apr. 6, 2015 Reply at 13, 16 (distinguishing "Amaudruz's ever-evolving key value" from "the type of identifiers used to implement the dynamic anonymity features of the claimed invention"). Properly construed, the claims recite further advancements over conventional single-use codes, requiring generating data defining periods in which the associated identifiers are used to identify the same subject, wherein neither identifier is so used during the other's period. JPMC again misconstrues the claims in wrongly equating this to *USR*'s step of enabling or denying a transaction based on a ***single code***. Dkt. 23, Appx. A at 2. Anonos requests construction of at least the following terms in all three asserted patents, under which the claims cannot be equated to *USR*:

| Term | Proposed Construction and Intrinsic Support |
|---|---|
| "associate… with [a/the] first data subject" | Assigning an identifier value, whether generated or received, to a data subject as its identifier. (**Intrinsic support:** '215 Pat. at 7:32-54, 11:64-12:16, 13:61-14:27, 17:53-56, 21:57-62, 22:14-23) |
| "two or more dynamically-changing temporally unique identifiers associated with the first data subject" | Two or more identifiers assigned to the same data subject, where:<br>• "temporally unique" means that each has a known time of assignment; and a time period of assignment that may be limited or perpetual in duration (**Intrinsic support:** '215 Pat. at 13:61-14:27),<br>• "dynamically-changing" has the definition at 13:66-14:9, including where the identifier assigned to a data subject changes over time or where different identifiers are used at different times with respect to the same data subject (**Intrinsic support:** '215 Pat. at 13:61-14:27),<br>• information identifying the data subject is not inherently computable or recoverable from the identifier (**Intrinsic support**: '215 Pat. at 4:64-5:23, 14:6-10, 20:3-20), and<br>• "associated with the first data subject" means assigned to the data subject as construed above, with that retained association linking both identifiers to the data subject, unlike a time-varying key or code that can only be used once but then cannot be used again. (**Intrinsic support**: '215 Pat. 5:12-17, 7:17-22, 20:62-65; '215 FH, May 11, 2015 Reply at 17-20; '216 FH, Apr. 6, 2015 Reply at 15-17; '133 FH, Apr. 6, 2015 Reply at 13, 16) |
| "is used to identify the first data subject" // "is not used to identify … during the [second/first] time period" | (a) "is used to identify the first data subject": the [first/second] identifier is used as an identifier for the first data subject in place of the underlying identifying information, where the identifier and its use as such does not by itself reveal that information; (b) "is not used to identify…": the [first/second] identifier is not used as an identifier for the first data subject in place of the underlying identifying information during the defined time period particular to the [second/first] identifier **Intrinsic support:** Asserted claims; '215 Pat. at 4:64-5:23, 14:6-10, 14:45-46, 16:8-13, 20:4-20, 23:30-32, 23:38-43; '215 FH, May 11, 2015 Reply at 19-20, Jun. 2, 2015 NOA; '216 FH, Apr. 6, 2015 Reply at 16-17, May 1, 2015 Supp. Reply, Jun. 2, 2015 NOA; '133 FH, Apr. 6, 2015 Reply at 13, 16, Jul. 14, 2015 NOA |

**Defendant JPMC's Position**

Anonos's request for claim construction does not justify delaying JPMC's § 101 motion because no construction would affect the eligibility analysis. Anonos's contrary argument recasts a feature of the patent in *Universal Secure Registry*—its one-time codes (*see* 10 F.4th at 1348)—as a claim construction dispute raised by JPMC. *See supra* at 2. Not so. JPMC proposed no constructions because none are necessary: comparing the asserted claims to those held ineligible in *Universal Secure Registry* is the *Alice* inquiry itself, which does not require claim construction. And the difference Anonos identifies does not matter: *Universal Secure Registry* turned on the functional, conventional use of time-varying codes, not on whether a code could be used only once. *Id.* at 1349. Even under Anonos's proposals, the claims remain ineligible.[2] As written or under Anonos's proposals, the claims recite what the identifiers do—*e.g.*, stand in for a person and change over time—not *how* a computer does it.

If every comparison to prior § 101 caselaw hurtled the parties into claim construction, no claim could be held ineligible without it. To the contrary, the Federal Circuit has made clear that "[c]laim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012); *see, e.g.*, *Torus Ventures LLC v. Cawley Partners, LLC*, No. 2:24-CV-00552-JRG, 2025 WL 1799327, at *2 & n.1 (E.D. Tex. June 30, 2025) (rejecting patentee's assertion that four terms needed construction before resolving ineligibility issues). Courts routinely do that: they "examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016). Even Anonos's own authority recognizes that eligibility may be decided before claim construction in appropriate cases. *DigitalDoors*, 2025 WL 957210, at *2.

Nor do Anonos's three proposed constructions change the outcome of the § 101 inquiry. Merely proposing a construction is not enough. Anonos must "articulate how adoption of the construction would materially impact the analysis at step one (and/or at step two)." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023) (affirming dismissal under § 101 without claim construction). Anonos never does so. None of its constructions shows that the claimed identifiers are anything other than changing codes substituted for a person's identity, which is the abstract idea here and in *Universal Secure Registry*. JPMC's motion already explained that under any proposed constructions "the claims would still recite the functional substitution of changing codes for a person's identity, carried out on a generic computer, and the *Alice* analysis would come out the same way." Dkt. 23 at 23. JPMC does not ask the Court to resolve any dispute about Anonos's constructions; because the claims are ineligible under them, the Court may "proceed by adopting the non-moving party's constructions." *Aatrix*, 882 F.3d at 1125.

Anonos first construes "associate…with [a/the] first data subject" as "[a]ssigning an identifier value, whether generated or received, to a data subject as its identifier." But that is simply a step of the abstract idea described in JPMC's motion: assigning codes to the person they will stand for. Dkt. 23 at 11, 14–15. The phrase "whether generated or received" confirms the claims are indifferent to how the code comes into being. Calling the step "assigning" rather than

[2] JPMC takes no position in this letter whether Anonos's proposed constructions are correct based on the intrinsic and extrinsic record.

*Universal Secure Registry*'s "mapping" does not convert a functional step into a technological improvement. The fact that *Universal Secure Registry*'s mapping occurs when a code is presented, as Anonos stresses (*supra* at 2), changes nothing: either way, the step assigns codes to the person they will stand for. Dkt. 23 at 11, 14–15. And Anonos's construction still fails to recite a data structure or technique for the assignment. "[S]tor[ing]" the identifiers and "time period data" in memory is ***not*** a data structure, as Anonos contends (*supra* at 2)—it is the generic use of conventional computer equipment. *See* Dkt. 23 at 14–15. The claims specify no arrangement of the stored data, unlike the self-referential table that improved how a computer stores and retrieves data in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016). And Anonos does not seek a construction of "store" at all.

Anonos's construction of "two or more dynamically-changing temporally unique identifiers associated with the first data subject" fares no better. It merely lists characteristics of the identifiers, including: a known time of assignment; a period of assignment that may be "limited or perpetual;" change over time; non-recoverability of the underlying identifying information; and a retained association linking both identifiers to the subject. Those characteristics merely describe what the time-varying codes are, not *how* they are produced or managed in a computer system. They say nothing about how an identifier is generated, how its time period is set or enforced, or how the association is kept—other than by storing it in generic memory. And the retained association is simply the "key or mapping" held by a trusted party, itself part of the abstract idea JPMC's motion addresses. Dkt. 23 at 11. In any event, the specification itself defines "dynamically changing" and "temporally unique," and those terms need no construction for deciding this motion. Dkt. 1-1 at 13:66–14:27. Indeed, JPMC brought its motion in full light of the specification. Dkt. 23 at 11 (specifically referencing definitions for "dynamically changing" and "temporally unique"). Nor does Anonos's reference to the prosecution history change the analysis. Even if the claimed identifiers differ from the prior art's single-use codes, a "claim for a new abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016). A reusable identifier is no less abstract than a single-use one. And to be clear—JPMC does not construe the claims to cover single-use codes in its motion, as Anonos alleges. *See supra* at 2.

Finally, Anonos construes "is used to identify the first data subject" to mean the identifier "is used as an identifier for the first data subject in place of the underlying identifying information," without "by itself reveal[ing] that information." That is also the abstract idea JPMC identified: substituting codes for a person's identifying information. Dkt. 23 at 10. The companion "is not used to identify" construction simply restates the claim language with the time period added, and that language tracks the claim in *Universal Secure Registry* that completed a transaction "without obtaining knowledge of the customer's identifying information." 10 F.4th at 1349; Dkt. 23 at 14–15. The requirement that neither identifier be used during the other's period (*see supra* at 3) states when each code may be used, not how a computer enforces it. Dkt. 23 at 15.

JPMC respectfully submits that no claim construction is needed to decide its motion. As shown above, Anonos's own constructions confirm, rather than undermine, JPMC's characterization of the claims. The Court can decide the § 101 motion now.

Respectfully submitted,

**RUSS AUGUST & KABAT**

/s/ *Marc Fenster*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
Minna Y. Jay
CA State Bar No. 305941
Email: mjay@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

Andrea L. Fair
TX State Bar No. 24078488
Email: andrea@millerfairhenry.com
MILLER FAIR HENRY, PLLC
1507 Bill Owens Pkwy
Longview, Texas 75604

*Attorneys for Plaintiff*
*Anonos Innovations LLC*

**GIBSON, DUNN & CRUTCHER LLP**

/s/ *Benjamin Hershkowitz*
Benjamin Hershkowitz
Katherine Dominguez
Hyunjong Ryan Jin
Danielle Zapata
Vania Wang
Vincent Zhang
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
bhershkowitz@gibsondunn.com
kdominguez@gibsondunn.com
rjin@gibsondunn.com
dzapata@gibsondunn.com
vwang@gibsondunn.com
vzhang@gibsondunn.com

Nathan Curtis
Monica Lin
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Ave., Ste. 2100
Dallas, TX 75201
(214) 698-3400
ncurtis@gibsondunn.com
mlin2@gibsondunn.com

Michael E. Jones
POTTER MINTON, P.C.
102 North College, Suite 900
Tyler, TX 75702
(903) 525-2239
mikejones@potterminton.com

*Attorneys for Defendant*
*JPMorgan Chase Bank, National Association*